AO 241 (Rev. 5/85)

PETITION UNDER 28 USC § 2254 FOR WRIT OF
HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| **United States District Court** | District of Massachusetts | |
|---|---|---|
| Name William R. Mitchell | Prisoner No. W-51474 | Case No. ? |

Place of Confinement

Norfolk State Prison, P.O. Box 43, Norfolk, MA 02056

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| William R. Mitchell | V. Luis Spencer/Superintendent of Norfolk |

The Attorney General of the State of: Massachusetts, Thomas F. Reilly

## PETITION

1. Name and location of court which entered the judgment of conviction under attack    Essex Superior Court,

   34 Federal Street, Salem, MA 01970

2. Date of judgment of conviction    November 14, 1991

3. Length of sentence    Life Sentence

4. Nature of offense involved (all counts)    Second Degree Murder (One Count)

5. What was your plea? (Check one)
   (a) Not guilty  ☒
   (b) Guilty  ☐
   (c) Nolo contendere  ☐
   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   None

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury  ☒
   (b) Judge only  ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

AO 241 (Rev. 5/85)

9. If you did appeal, answer the following:

   (a) Name of court   Appeals Court for Massachusetts

   (b) Result   Conviction affirmed

   (c) Date of result and citation, if known   March, 1995/ 38 Mass.App.Ct. 184 (1995)

   (d) Grounds raised   Prosecutorial misconduct; abuse of discretion/improper jury instruction; other bad acts/witness testimony; flawed jury instructions on manslaughter and provocation.

   (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

      (1) Name of court   Supreme Judicial Court for Massachusetts

      (2) Result   Conviction affirmed

      (3) Date of result and citation, if known   April 24, 1995/ 420 Mass. 1101 (1995)

      (4) Grounds raised   Denial of motion for a mistrial; fingerprints and DNA contamination; Prosecutorial Misconduct and effevtive assistance of counsel.

   (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

      (1) Name of court   None

      (2) Result   None

      (3) Date of result and citation, if known   None

      (4) Grounds raised   None

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
    Yes ☒ No ☐

11. If your answer to 10 was "yes," give the following information:

   (a) (1) Name of court   Essex Superior Court

      (2) Nature of proceeding   Motion for a new trial and amended motion for a new trial and other related motions.

      (3) Grounds raised   Prosecutorial Misconduct/use of false and perjured testimony (Two Counts)/improperly vouced for credibility of his witnesses;

AO 241 (Rev. 5/85)

Defendant did not waive his right to testify in his own defense where defendant was prescribed medication by the Commonwealth; Trial counsel's ineffective assistance of counsel for failure to impeach to witnesses/failure to obtain a vital witness and failure to obtain a material witness; appellate counsel/ineffective assistance of counsel(Two Counts).

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒

(5) Result __Motions denied__

(6) Date of result __July 2, 1998__

(b) As to any second petition, application or motion give the same information:

(1) Name of court __Essex Superior Court__

(2) Nature of proceeding __Motion for a new trial/September 18, 2000__

(3) Grounds raised __Flawed Jury Instruction/Manslaughter and provocation;__ evidence warranted instructions and the instructions were conflicting without corrective language.

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☒ No ☐
(5) Result _____Motion Denied.

(6) Date of result __August 7, 2001__

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.      Yes ☒  No ☐
(2) Second petition, etc.     Yes ☒  No ☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

See above at "c".

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting same.

CAUTION: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

AO 241 (Rev. 5/85)

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted your state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(j) Denial of right of appeal.

A. Ground one: Erroneous Manslaughter Instruction (Provocation). Evidence Warranting Instruction and Conflicting language/confusion to the jury.

Supporting FACTS (state *briefly* without citing cases or law) The Essex Superior Court delivered an erroneous manslaughter instruction that was considered unconstitutional after defendant's trial. denied defendant due process.

After an earlier incident during the day of April 25, 1990, on or around 11:00 p.m. four to five men came to defendant's home and attacked him at the doorway, and as a result, someone got stabbed and died. The defendant was arrested for murder, but was indicted on second degree murder on May, 1990. The State Court delivered an erroneous manslaughter instruction pertaining to provocation and manslaughter which relieved the Commonwealth of there burden of proof beyond a reasonable doubt in violation of the State and Federal Constitution.

B. Ground two: ( i The prosecutor engaged in prejudicial misconduct when he "knowingly" used false and perjured testimony as to Two of his witnesses; Misrepresented the defendant's criminal record that never existed; Improper vouching of Commonwealth's witnesses.

Supporting FACTS (state *briefly* without citing cases or law):( i The prosecutor presented two witnesses who both claimed and denied that the Commonwealth promised them a reward, deal, or acquittal of prior charges in exchange for their testimony, and the Commonwealth knowingly knew that his witnesses were lying as to the promise, rewards or deal. The prosecutor obtained a ruling from the judge so he could use one of defendant's prior convictions, which were suppressed in the event defendant testified, but used this prior conviction through one of the Commonwealth's witnesses to rehabilitate his witness about a prior stabbing. The prosecutor improperly vouched for one of his key witnesses in closing arguments, when he argued that his witness has nothing to lie about and he tells  you he sees everything that

Cont.....

B.Ground Two:

(ii) The defendant did not knowingly and intelligently waive
his rights to testify on his own behalf in violation of the
State and Federal Constitution.

(iii) Trial counsel rendered ineffective assistance of counsel
in violation of the State and Federal Constitution, when he
failed to impeach Two of the Commonwealth's key witnesses; and
his failure to prepare and present Two crucial defense witnesses.

(iv) Appellate counsel rendered ineffective assistance of counsel
when he failed to raise on direct appeal issues (i)-(iii), and
his failure to raise an "other bad acts" argument in violation of
the State and Federal Constitution.


Statement of Facts:
B. Ground Two:

...happened between the victim and the defendant.

(ii) The defendant did not knowingly and intelligently waive his
right to testify because trial counsel never discussed the
details as to what he could expect and how it would effect his
defense.  Furthermore, counsel "knew" that defendant was being
treated for depression and stress, and he also"knew"that defendant
was prescribed medication right up to the day of trial and his
conviction.  As a result, defendant could not make an informed
decision as to whether or not he was going to testify.

(iii) Trial counsel failed to impeach two of the Commonwealth's
witnesses when one witness, John Koney, changed his story two
times and gave a third story at trial.  On redirect-examination,
Koney was allowed to rehabilitate his testimony, and tell the jury
that three months prior to this case defendant had stabbed him
in an earlier altercation, and that defendant threaten him with a
hammer and claiming that he (Koney) should not have put the
defendant in jail for 41 days.  The defendant was never convicted
for this crime against Koney, and the admission of this testimony
prejudiced the defendant.  Counsel never obtained his criminal
records from this case in order to impeach Koney.

        Trial counsel failed to impeach Mr. True with records that
existed at the time of trial that Mr. True did have a charge of
assault by means of a dangerous weapon dismissed by the
Commonwealth without prejudiced, therefore, Mr. True claimed
that the Commonwealth never granted him a deal, or reward and/or
promise for his truthful and honest testimony.  Counsel failed to
impeach True with these records.

-5b-

Cont....


Statement of Facts:
B. Ground Two:


     Trial counsel failed to obtain a crucial witness, Penny
Tardif.  Ms. Tardif lived across the hall from defendant, and
she had personal knowledge of the chain of events that occured
the night of the incident, April 25, 1990.  Ms. Tardif gave
Salisbury Police a official statement (Police Report) that she
let the victim and at least five of his friends into her apartment,
and she asked the victim what do you want, and he said I am
going to kick ass.  The victim asked for a knife and she gave him
a butter knife, and she witnessed the victim pick the door to
defendant's apartment and then she heard a lot of commotion in
the hallway, and said that the victim said call the cops, and
she said that she did not have one.

     Trial counsel also failed to obtain a crucial witness,
James Barnes, Ms. Tardif's boyfriend.  He gave Salisbury Police
a statement of what happened the night of the incident.  He
told police that the victim and three of his friends came in
through Ms. Tardif's porch  door and the second floor, they all
went to the defendant's apartment, but came back and asked for
a knife.  They all went back to the defendant's apartment, which
was right across the hall.  Both potential witnesses harbored
exculpatory evidence and could have effected the outcome of
the proceedings.

(iv) Appellate counsel failed to raise on direct appeal these
issues and he also failed to present an other bad acts argument.
Appellate counsel could have, but did not obtain the defendant's
criminal records from the prior stabbing with John Koney, and
presented an other bad acts argument.

AO 241 (Rev. 5/85)

C. Ground three: <u>The prosecution team violated defendant's rights to due</u> process of law and effective assistance of counsel by improperly <u>contaminating a crucial bloodstain on the knife used to kill the victim,</u> thereby, thwarting defense efforts to type that blood, and misleading counsel, <u>and results. Prosecutor argued this in closing arguments.</u>

Supporting FACTS (state *briefly* without citing cases or law):

(i)The prosecutor violated a pretrial conference report or agreement as <u>to sending the knife to the FBI for DNA testing. The prosecutor never</u> sent the knife as agreed, but sent a swab from the knife to be tested, and th<u>e expert for the Commonwealth did not know what end of the knife</u> the sample came from, thereby, requiring a mistrial. (ii) The fingerprint <u>testing on the knife handle by use of a super glue method, made</u> conventional blood typing tests on the bloodstain on the handle impos<u>sible. The fingerprints were destroyed as a result. (iii) Defense</u> counsel relied on the fundamental misunderstanding of the forensic <u>evidence resulted directly from the prosecutor's failure to have the</u> knife, or both blood samples on it, tested as promised. This made the FBI <u>report misleading to the defense, and amounted to governmental interferenc</u>

D. Ground four:

The judge improperly instructed the jury to consider one of the Commonwealth's witnesses, Sean Riley's grand jury testimony, which directly contradicted his trial testimony, for impeachment purposes only.

Supporting FACTS (state *briefly* without citing cases or law): _____

Defense counsel offered Sean Riley's grand jury testimony on the vital issue of whether the victim and his companions had attempted to force the front door of the apartment the defendant was in, as the defense alleged, or had been let in, as the Commonwealth alleges. The judge improperly limited the jury's consideration of this evidence to the issue of the witness's credibility. Riley's grand jury testimony directly contradicts his grand jury testimony, and it should have been allowed for its full probative value.

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: _____

    All where presented in the State Court.

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
    Yes ☐   No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:
    (a) At preliminary hearing _ Frank Marchetti for trial.

    (b) At arraignment and plea ____ Frank marchetti

-6a-

Cont...

C. Ground Three:

(iv) The prosecutor utilized the test results in his closing
arguments.  The prosecutor told the jury that the blood on the
knife handle was defendant's, and there was no report stating
that.  This was grossly improper.

Cont...

E. Ground Five:

The testimony by the Commonwealth's witness, John Koney,
that the defendant had stabbed him, been jailed as a result,
and terrorized him and his family upon defendant's release,
and it was offered to explain Koney's three false statements
to police, and finally, his last-minute claim to be an eye-
witness to the whole killing was more prejudicial than
probative.

Statement of Facts:
E. Ground Five:

(i)  The Commonwealth's admission of defendant's prior bad acts
denied him a fair trial, and gave the jury a bad impression of
defendant as one who will fight at a drop of a hat, and that he
is combatant. Mr. Koney neatly dovetailed with the Commonwealth's
case or theory that defendant attacked the victim without
provocation, in the hall outside the apartment.  Koney had never
given this account to anyone until five days before trial, when
he related it to the prosecutor.  Furthermore, Koney testified
that, three months before the killing, the defendant stabbed
him with a knife after Koney and his brother went to the
defendant's apartment to intervene in a fight between the defendant
and one of Koney's friends.  Koney was allowed to recount the
events in some detail.  Koney quoted the defendant as telling
Koney that he shouldn't have put him in jail for the forty-one
days, and saying as he pounded on the cabinets with a hammer,
I'll show you some power.  The stabbing event was irrelevant
because Koney said he was personally unafraid of defendant
and concerned only about his family's welfare.


F. Ground Six:

Fundamental flaws in the jury instructions, all ignored by
defense counsel deprived defendant of otherwise available,
viable defense to murder.

Statement of Facts:
F. Ground Six:

(i) The judge defined murder as an unlawful killing, with malice-
aforethought.  He said that a killing in self-defense negates the
elements of unlawfulness; but not that self-defense negates
malice aforethought also.  The judge further instructed that the
reasonableness of the force used in self-defense distinguishes
murder from manslaughter.  The judge offered no guidance on how
to determine whether the victim was "unlawfully" in the
apartment, or with respect to what point in time they should
make that determination.  The judge also told the jury that

-6c-

Cont...

Statement of Facts:
F. Ground Six:

in evaluating the defendant's fear of attack, the jurors were
emphatically told to consider the threat posed by the victim
alone.

(ii) In defining malice, the judge defined the three prongs
of malice and erroneously told the jury, both initially and
in supplementary instructions that voluntary intoxication
could be considered in connection with the two involving
specific intent, but not with the one involving general intent.

(iii) Regarding voluntary manslaughter, the judge erroneously
told the jurors that provocation, sudden combat and excessive
force are elements to by proven beyond a reasonable doubt by
the prosecution.  He emphasized that these elements had to be
affirmatively established by the prosecution to justify a
voluntary manslaughter conviction.

(iv) The judge failed to define the critical nexus between
self-defense and malice aforethought, and because self-defense
was a contested issue, the defendant was constitutionally
entitled to instructions which clearly assigned the burden of
proving beyond a reasonable doubt each fact necessary to
constitute the crime with which he is charged to the Common-
wealth.  This includes instructions clearly informing the jury
of the critical nexus between self-defense, provocation and
sudden combat, on the one had, and malice aforethought on the
other; that is, malice aforethought and each of these defenses
are mutually exclusive and cannot coexist. As to self-defense,
the judge said that it negates the element of unlawfulness
in murder.  He also said the use of excessive force marked
the distinction between manslaughter and murder.  But he never
told the jury that self-defense and malice are mutually
exclusive.  This was constitutional error.

(v) The judge improperly instructed the jury that only the
victim's behavior was relevant to  whether the defendant
actually and reasonably believed he faced a threat of death
or serious bodily injury.  At the time of the incident, the
victim and his five friends had come to the front door of the
apartment building.  They were pounding on walls to be let in
the building.  When they could not get in the front security
doors, they went up a fire escape to the second floor porch.
The victim was let in on the second floor he went down the
stairs and let his friends in.  The victim obtained a knife
and picked the door to defendant's apartment with his friends
standing with him in  the hallway.  Under these circumstances,
it was improper for the judge to instruct that, in evalutaing
defendant's resort to deadly force, the jury could only

-6e-

Cont...

Statement of Facts:
F. Ground Six:

(ix) The flawed jury instructions deprived defendant of a
substantial opportunity for a voluntary manslaughter verdict.
The instructions misdefining voluntary manslaughter and
requiring affirmative proof of mitigating circumstances
allowed the jury to convict defendant of murder even if they
held a reasonable doubt whether he had acted without
provocation or in sudden combat, or used excessive force in
defending himself.  The instructions permitted simulataneous
findings of malice and  self-defense.  The instructions on
excessive force required that circumstances to be affirmatively
proved to established manslaughter rather than requiring it
to be disproved beyond a reasonable doubt to establish
muder.  These instructions created confusion with the jury
because defendant could have been convicted of manslaughter
instead of murder.  Especially, if the jurors harbored a
reasonable doubt that any of the mitigating circumstances
existed, or that defendant acted in self-defense but used
excessive force.

AO 241  (Rev. 5/85)

(c)  At trial __Frank Marchetti  (CPCS)_____

_____

(d)  At sentencing __Frank Marchetti_____

_____

(e)  On appeal __John Thompson (CPCS)_____

_____

(f)  In any post-conviction proceeding __First two motions were done pro-se.__

__The third motion for a new trial counsel were Jean M. Fielding and__
Greg T. Schubert. (CPCS)

(g)  On appeal from any adverse ruling in a post-conviction proceeding __Pro-se on the first Two__
motions, and Greg T. Schubert on appeal for the third motion for a
new trial.

16.  Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
Yes ☐  No ☒

17.  Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐  No ☒
(a)  If so, give name and location of court which imposed sentence to be served in the future: _____

None

(b)  Give date and length of the above sentence: __None_____

_____

(c)  Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐  No ☒

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

__None_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

__April 21, 2004_____
(date)

_William R. Mitchell_
Signature of Petitioner

(7)