UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                              )
WILLIAM R. MITCHELL,          )
      Petitioner,             )
                              )
                              )
      -V-                     )        CIVIL ACTION
                              )        NO. 10844-MLW
                              )
LUIS SPENCER,                 )
      Respondent.             )
                              )
```

PETITIONER'S OPPOSITION TO RESPONDENT'S MOTION TO
DISMISS PETITION FOR WRIT OF HABEAS CORPUS

NOW COMES the petitioner in the above-entitled matter, and he does hereby respectfully offer his opposition to the respondent's motion to dismiss petition for writ of habeas corpus.  In support hereof, the petitioner submits the following.

PRIOR PROCEEDINGS

The petitioner adopts here the prior proceedings of the present case as outlined in the respondent's memorandum of law in support of their motion to dismiss at pages one through two, and he incorporates the same herein by reference.

-2-

ARGUMENT

I.    PETITIONER'S HABEAS CORPUS PETITION SHOULD NOT BE
DISMISSED AS TIME BARRED BY THE STATUTE OF LIMITATIONS
AS THE DOCTRINE OF EQUITABLE TOLLING APPLIES IN THIS
CASE

   a. Section 2244(d)(1)(D)

   "Under the Antiterrorism and Effective Death

Penalty Act (AEDPA), a one (1) year statute of

limitations shall apply to an application for writ of

habeas corpus by a person in custody pursuant to

judgment of a state court.  The one year statute of

limitation shall run from the latest of:

> (A) the date on which the judgment became final
> by the conclusion of direct review or the
> expiration of the time for seeking such review;
>
> (B) the date on which the impediment to
> filling an application created by State action
> in violation of the Constitution or laws of
> the United States is removed, if the applicant
> was prevented from filing by such State
> action;
>
> (C) the date on which the constitutional right
> asserted was initially recognized by the
> Supreme Court, if the right has been newly
> recognized by the Supreme Court and made
> retroactively applicable to cases on collateral
> review; or
>
> (D) the date on which the factual predicate of
> the claim or claims presented could have been
> discovered through the exercise of due
> diligence."

-3-

See Smith v. Stegall, 141 F.Supp.2d 779, 781 (E.D.Mich.
1998); Flanagan v. Johnson, 154 F.3d 196, 198
(5th Cir. 1998).

Although petitioner's petition for writ of habeas
corpus is time-barred by three months, he respectfully
argues that under 28 U.S.C. §2244(d)(1)(D), which
states in pertinent part that:

> The date on which the factual predicate of the
> claim or claims presented could have been
> discovered through the exercise of due
> diligence,

should apply to his case for the limited purpose of
"Ground One" of his habeas petition. (Petition at 5).

On April 24, 1995, the petitioner's conviction
became final. Commonwealth v. Mitchell, 420 Mass. 1101
(1995). (See docket entry attached).[1]  The petitioner
did not seek a petition for writ of certiorari to the
Supreme Court of the United States within the 90 day
period for filing such a petition.  The petitioner's
conviction then became final no later than July 24,
1995.  See Mayne v. Hall, 122 F.Supp.2d 86, 90
(D.Mass. 2000). (See docket entry).

---

[1]   All relating docket entries from the Superior Court,
Appeals Court, and the Supreme Judicial Court are attached
hereto.  All other documents cited herein are also attached
hereto.

-4-

On April 24, 1996, the Antiterrorism and
Effective Death Penalty Act (AEDPA) became effective.
Connors v. Matesanz, 37 F.Supp.2d 78, 80 (D.Mass.
1999), citing Montero v. Cobb, 937 F.Supp 88, 92
(D.Mass. 1996). The petitioner had a 1-year "grace
period" running from the effective date of April 24,
1996 to April 23, 1997 in order to file his petition.
Connors, supra, at 81. However, "prior to the AEDPA's
enactment, 'a prisoner faced no strict time
constraints in filing a petition for wriy of habeas
corpus.'" Villegas v. Johnson, 184 F.3d 467, 468
(5th Cir. 1999), quoting Mayne v. Hall, 122 F.Supp.2d
86, 90 (D.Mass. 2000). See Rose v. Lundy, 445 U.S.
509, 518-519 (1982).

Unbeknownst to the petitioner of the AEDPA
enactment, and that "[t]he AEDPA altered these
circumstances by imposing a one year limitation period
for habeas petitions," see 28 U.S.C. §2244(d)(1), and
although "[i]gnorance of the law alone, even for
incarcerated pro se prisoners, does not excuse an
untimely filing," Lattimore v. DuBois, 311 F.3d 46, 55
(1st Cir. 2002), the petitioner proceeded to exhaust
his state court remedies as this was the law at the
time. Rose, supra, at 518-519. See Slack v.
McDaniel, 529 U.S. 473, 486-487 (2000).

-5-

The petitioner took almost two years to formulate his first motion for a new trial pursuant to Mass.R. Crim.P. Rule 30(b), as there are no time limits on filing such a motion. The petitioner filed his post-conviction motion in the Essex County Superior Court on July 21, 1997. By this time, as the respondent argues, on July 21, 1997, the petitioner was already three months late in bringing his petition to the federal court. (Respondent's Mem. at 4)(Petition at 5) (See docket entry).

The petitioner was caught in a catch-22 because while he was busy pursing his state court claims, the law changed in mid-strid, and by the time he found out about the AEDPA, it was to late, and as a result, he lost any chance of filing his federal petition. (Respondent's Mem. at 5).

On August 25, 1997, the Massachusetts Superior Court denied petitioner's first post-conviction motion. (See docket entry). On November 19, 1997, petitioner filed a first motion for reconsideration and a second on November 24, 1997. On April 2, 1998, petitioner filed an amended motion for a new trial, which the government calls petitioner's second motion. On July 2, 1998, the Essex County Superior Court denied the petitioner's second post-conviction motion, and he

-6-

appealed. (See docket entry).

On July 2, 1998, the same exact day the Essex
County Superior Court (Brady, J.) denied petitioner's
two post-conviction motions, the Massachusetts
Supreme Judicial Court handed down a "new" case
concerning erroneous jury instructions in the
manslaughter charge, and the Commonwealth's burden of
proof, which violate the due process clause of the
14th Amendment to the United States Constitution.
See Commonwealth v. Acevedo, 427 Mass. 714 (1998).
(Petition at 5).

On August 13, 1999, petitioner, in lieu of his
appeal from his two post-conviction motions, filed a
petition for rehearing on his first further appellate
review dated March 22, 1995, raising the "new"
constitutional principals. (See Supreme Judicial Court
docket entry FAR-07787 and petition for rehearing
attached).  On September 27, 1999, the Supreme Judicial
Court denied petition for rehearing. (See Supreme
Judicial Court docket entry).

Meanwhile, on February 25, 2000, the Massachusetts
Appeals Court issued a memorandum and order under Rule
1:28 affirming the judgments of the lower court in
denying petitioner's various post-conviction motions.
See Commonwealth v. Mitchell, 48 Mass.App.Ct. 1121 (2000).

-7-

On June 14, 1999, another case was handed down
by the Massachusetts Supreme Judicial Court.  See
Commonwealth v. Carlino, 429 Mass. 692 (1999).  This
case also concerned the erroneous manslaughter
instructions deemed prejudicial in Acevedo, at 717.

On may 14, 2000, petitioner, with "due diligence"
filed a second petition for rehearing on his second
further appellate review based on both Acevedo and
Carlino, thereby, seeking relief of his conviction.
(See FAR-11222 docket entry and further appellate
review dated March 13, 2000).

On September 18, 2000, it was petitioner's first
opportunity that he had to properly file a third
post-conviction motion raising the erroneous
manslaughter instructions.  On August 7, 2001, the
Essex County Superior Court (Brady, J.) denied
petitioner's third motion for a new trial.
(See docket entry).  On August 30, 2001, the petitioner
appealed this decision to the Massachusetts Appeals
Court. (See Appeals  Court docket entry).  On
February 26, 2003, the Massachusetts Appeals Court
issued a memorandum and order pursuant to Rule 1:28
affirming the judgments of the lower court in denying
third motion for a new trial. (See memorandum and order
dated February 26, 2003).

-8-

On March 6, 2003, petitioner filed his third application for further appellate review.  On March 12, 2003, the petitioner's court appointed attorney filed a letter raising "following points." (See Supreme Judicial Court docket entry and letter). On April 2, 2003, the Supreme Judicial Court denied application for further appellate review. <u>Commonwealth</u> v. <u>Mitchell</u>, 439 Mass. 1102 (2003). (See Supreme Judicial Court docket entry).

The petitioner then filed a petition for rehearing on further appellate review dated June 9, 2003 FAR-13290.  On June 26, 2003, the Supreme Judicial Court denied petition for rehearing. (See Supreme Judicial Court docket entry and order attached).

The petitioner argues for the purposes of this petition he believes that equitable tolling is warranted in this case because he could not have known that his manslaughter instructions were constitutional defective until <u>Acevedo</u> was placed in the Prison Law Library on or around July 2, 1998, the same exact day that the Essex County Superior Court (Brday, J.) denied his two post-conviction motions, and three years after petitioner lost his opportunity to file a writ of habeas corpus petition.  See <u>Easterwood</u> v. <u>Champion</u>, 213 F.3d 1321, 1323 (10th Cir. 2000).  See 28 U.S.C.

-9-

§2244(d)(1)(D).

To further support his claim of equitable tolling, the petitioner, knowing that by this time he was already time-barred from filing a petition. On March 26, 2004, petitioner filed an application for authorization for a second and successive petition in the United States Court of Appeals for the First Circuit seeking to obtain relief from the erroneous manslaughter instructions. On April 16, 2004, a panel of the First Circuit entered a judgment stating that:

> So far as appears, petitioner has not yet filed a first §2254 petition in a federal district court. Petitioner seems to be asking us to determine that a first §2254 petition would not be barred by the one-year statute of limitations. We will not address that question at this time. Because petitioner has not yet filed a first §2254 petition in federal court, he does not need permission from this court to file a §2254 petition in the district court. If he does file a §2254 petition in federal district court, he may there argue why his petition should be regarded as timely or that the statute of limitations should be equitably tolled. If the district court dismisses the §2254 petition as time barred, then petitioner may appeal and we will address timeliness at that point.

(See attached).

-10-

As a result, the petitioner filed this present petition.

The respondent argues in the alternative that "[p]etitioner's claim that he discovered the legal predicate for his claims after the one-year grace (presented in his application for authorization for a second and successive petition) does not excuse the late presentation of his petition. By its plain language, the term "factual predicate" refers to the historical facts that would form the basis of a habeas petition, not new court decisions which would form the basis of a petition. Therefore, "factual predicate" has been interpreted to mean historical or evidentiary facts, not the recognition of the legal significance of facts or court decisions. Brackett v. U.S., 270 F.3d 60, 69 (1st Cir. 2001). (Respondent's Mem. at 4 n.3).

The petitioner begs to differ because there are other circuits that are slit on this question and interpret section 2244(d)(1)(D) in a different manner. See Easterwood v.Champion, 213 F.3d 1321, 1323 (10th Cir. 2000) and Wims v. United States, 225 F.3d 186, 190 (2nd Cir. 2000). In Easterwood, the court reasoned that, "under the 'due diligence' standard, a prisoner was charged with knowledge of facts

-11-

contained in published legal opinions (and, accordingly, the limitations period began to run) on the date those opinions became available in the prison library, not on the earlier date on which they were issued. Id. at 1323; Wims, supra, at 190. The petitioner in Easterwood, did not actually discover the relevant opinion until substantially after it arrived in the prison library. The Court further held that "[u]nlike the general population which has greater access to court opinions, prisoners must rely exclusively upon the prison law library to discover information contained in new cases," ... "a prisoner could with 'duediligence' discover information related in a case before the prison library has access to a copy of the opinion simply ignores the reality of the prison system." Id.

As a result of this holding Easterwood's case was remanded for further proceedings. The reason being is that the Court did not have any "information whether an advance sheet or soft back copy of Williamson may have been accessible in the prison law library before the hard back copy of 110 F.3d arrived. On remend, the state [was] free to make an offer of proof that Williamson was available to Mr. Easterwood before July 15, 1997. Likewise, the district court is not

-12-

necessarily limited to determining when the prison law
library had a copy of <u>Williamson</u>-it also may consider
any evidence that Mr. Easterwood had access to the
information about Dr. Garcia through means other than
<u>Williamson</u>." <u>Id</u>. at 1323 n.2.

In the petitioner's case, appellate counsel
raised on direct appeal an erroneous manslaughter
instruction where the language therein shifted the
burden of proof to the petitioner. At this particular
time, the leading case for the Commonwealth's burden
of proof and the erroneous manslaughter instructions
in state court was <u>Commonwealth</u> v. <u>Boucher</u>, 403 Mass.
659, 663 (1989)(dictum). Unfortunately, the
Massachusetts Appeals Court declined  review of the
erroneous instructions. <u>See</u> <u>Commonwealth</u> v. <u>Mitchell</u>,
38 Mass.App.Ct. 184, 197 (1995) (of the numerous
complaints concerning the trial judge's jury instructions,
to which no objections were taken, only one warrants
some discussion).

It is obvious that the Appeals Court never made a
determination on his erroneous jury instructions one
way or the other, even in light of appellate counsel's
very convincing argument that was available to him at
the time. The petitioner further argues that the judge
told the jury that conditions or reasonably provocation,

-13-

sudden combat or excessive force in self-defense had to be affirmatively established before defendant could be found guilty of voluntary manslaughter.  Appellate counsel then argued that provocation or other mitigating circumstances are defenses to murder, not elements of proof of voluntary manslaughter. <u>Boucher</u>, <u>supra</u>.

The problem with <u>Boucher</u> is that the Court held only in dictum that the trial court should give the jury some kind of guidance concerning the Commonwealth's burden of proof when instructing on reasonable provocation and sudden combat or excessive force in self-defense.  In <u>Commonwealth v. Acevedo</u>, 427 Mass. 714, 716 (1998), the court finally made clear where the Commonwealth's burden of proof lies. Therefore, <u>Acevedo</u>, is given complete retroactive effect because the facts on the Commonwealth's burden of proof in <u>Boucher</u> where not fully developed until <u>Acevedo</u>.  As a result, the petitioner could not have discovered the predicated facts of his erroneous manslaughter instructions until then.

Furthermore, the difference between <u>Boucher</u> and <u>Acevedo</u> are that in <u>Boucher</u> the court failed completely in instructing the jury on the Commonwealth's burden of proof and in <u>Acevedo</u> the court simply gave an

-14-

erroneous one.  In addition, the judge in <u>Acevedo</u>
was the same judge as that in petitioner's and
that case was overturned by the Supreme Judicial
Court because the trial judge gave two irreconcilable
instructions, and "a reviewing court has no way of
knowing which of the two irreconcilable instructions
the jurors applied in reaching their verdict."
<u>Acevedo</u>, <u>supra</u>, at 717, citing <u>Francis</u> v. <u>Franklin</u>,
471 U.S. 307, 322 (1985).  See <u>Niland</u> v. <u>Hall</u>, 280
F.3d 6, 11 (1st Cir. 2002).  See also <u>Lattimore</u> v.
<u>DuBois</u>, 311 F.3d 46, 56-57 (1st Cir. 2002).
(Petition at 5,6b,6c and Grounds One and Six (iii),
(iv)).

The petitioner could not have known with "due
diligence" that the facts of his jury instructions
and/or injury where going to change in the future,
and therefore, he cannot be charged with knowledge.
Unlike <u>Easterwood</u> and <u>Wims</u>, both petitioners could
have known about the facts in their case at an
earlier date, and petitioner's case can be
distinguished from them.  Additionally, in tort law
under the discovery rule, the running of the statute
of limitation does not begin until the fact of the
injury becomes known, or should have become known in
the exercise of due diligence.  See e.g., <u>Collins</u>

-15-

v. Nuzzo, 244 F.3d 246, 253 (1st Cir. 2001), quoting

Brackett v. U.S., 270 F.3d 60, 69 n.4 (1st Cir. 2001).

The petitioner respectfully argues that he did
not know of his injury until Acevedo was published in
the prison law library on July 2, 1998, and under
section 2244(d)(1)(D), the one year statute of
limitations should begin from the last date on which
the Supreme Judicial Court denied the petitioner's
petition for rehearing, and that was on June 26,
2003, and therefore, equitable tolling is appropriate.

Although the circuits are split on this point,
the petitioner surely demonstrates that equitable
tolling is proper under section 2244(d)(1)(D).  See
Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000);
Hereford v. McCaughtry, 101 F.Supp.2d 742, 745
(E.D.Wis. 2000); Libby v. Magnusson, 177 F.3d 43, 50
(1st Cir. 1999); Ybanez v. Johnson, 204 F.3d 645, 646
(5th Cir.)(per curiam) cert. denied, 531 U.S. 881
(2000); Sanna v. Dipaolo, 265 F.3d 1, 7 (1st Cir. 2001).

In the alternative, petitioner argues that
equitable tolling should be applied where he, with due
diligence, moved to exhaust all his state court
remedies prior to filing his petition, and that he
should be excused from the three months which caused
his petition to be barred in the first place.  See

-16-

Dalaney v. Matesanz, 264 F.3d 7, 14 (1st Cir. 2001)
(the diligence of the party pursuing judicial remedies
may be a factor in deciding whether equitable
tolling applies), quoting Brackett v. U.S., 270 F.3d
60, 71 (1st Cir. 2001). See Rose v. Lundy, 445 U.S.
509, 518-519 (1982).

The petitioner demonstrates that he has not been
"[sitting] on his hands for a great many years," like
Brackett, at 71 or like Lattimore, 311 F.3d at 55,
where "he waited over a decade after his direct appeals
were complete before pursuing habeas relief..." See
Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998)
(It is apparent that Mr. Miller simply did not know
about the limitation in the AEDPA until it was too late).
THerefore, the petitioner is a good candidate for
equitable tolling.

b. Section 2244(d)(1)(C)

Under section 2244(d)(1)(C), a petitioner has a
1-year period from:

> the date on which the constitutional right
> asserted was initially recognized by the
> Supreme Court, if the right has been newly
> recognized by the Supreme Court and made
> retroactively applicable to cases on
> collateral review.

See Smith v. Stegall, 141 F.Supp.2d 779, 781
(E.D.Mich. 2001); Wyzykowski v.Department of

-17-

<u>Correction</u>, 226 F.3d 1213, 1216 (11th Cir. 2000).

The petitioner suggests that although his petition
is time-barred by the three months, this section also
applies to his case for the limited purpose of "Ground
One" of his petition. (Petition at 5). The petitioner
rests on his earlier argument (Argument I(a), ante at
2-8).

The petitioner respectfully argues that <u>Acevedo</u>
is retroactively applicable to cases on collateral
review in the state court, although not directly handed
down from the Supreme Court, the substance of this
case concern burden shifting instructions which violate
the due process clause of the 14th Amendment to the
United States Constitution, which in turn, steam from
Supreme Court precedent. See <u>In re Winship</u>, 397 U.S.
358, 364 (1970) (due process retroactively applied);
<u>Mullaney</u> v. <u>Wilbur</u>, 421 U.S. 684, 689 n.8 (1975)
(due process retroactively applied), citing <u>Ivan</u> v.
<u>City of New York</u>, 407 U.S. 203, 204 (1972) (due process
retroactively applied).

The trial judge in petitioner's case delivered two
irreconcilable instructions which have the effect of
shifting the burden of proof or creating a mandatory
presumption, and "[l]anguage that merely contradicts
and does not explain a constitutionally infirm

-18-

instruction will not suffice to absolve the infirmity."
Francis v. Franklin, 471 U.S. 307, 322 (1985).

In Mullaney, at 698-701, the "[court] explicitly
held unconstitutional a mandator rebuttable
presumption that shifted to the defendant a burden of
persuasion on the question of intent."  In Sanstrom v.
Montana, 442 U.S. 510, 524 (1979), the "[court]
similarly held that instructions that might reasonably
have been understood by the jury as creating a
mandatory rebuttable presumption were unconstitutional."
Francis, supra, at 317-318.

The Mullaney court delivered the same exact
burden shifting instructions as that in petitioner's
and that they were identical to those deemed
unconstitutional in Acevedo, supra, at 716.  Thereby,
identical to those given in petitioner's case.

To further support this argument, the court in
Acevedo, cites the proper authorities for
determining whether or not a jury instruction creates
a mandatory presumption.  The court cites Francis and
Commonwealth v. Repoza, 400 Mass. 516, 519; cert.
denied, 484 U.S. 935 (1987), and both of these
authorities are retroactively applicable to the State
on collateral review, and where both authorities are
cited in Acevedo, and where Acevedo is "new", then

-19-

Acevedo can be retroactively applicable through the
window of the due process clause of the 14th Amendment
to the United States Constitution on collateral review
in petitioner's case.

Although not directly, but indirectly through
Supreme Court precedent.  In other words, Acevedo is
retroactively applicable to him through the same
mechanism as that of Repoza.  Therefore, the
petitioner is a good candidate for applying this
section to his case for the purpose of equitable
tolling.

### c. Consideration of Entire Application

Section 2244(d)(1) sets forth the relevant one
year statute of limitations in the first sentence.  The
sentence reads as follows: "A 1-year period of
limitations shall apply to an application for a writ of
habeas corpus by a person in custody pursuant to the
judgment of a State court." 28 U.S.C. §2244(d)(1)
(emphasis added).  The remaining language in this
subsection details the alternative triggering dates
for the one year period.  As indicated in section
2244(d)(1)(D), a "claim or claims" may have
different triggering dates.  Where there are
different triggering dates, the one year limitation
period begins to run "from the latest of" those dates.

-20-

28 U.S.C. §2244(d)(1).

Section 2244(d)(1)'s use of the word
"application" as opposed to the word "claim" used
elsewhere, 28 U.S.C. §2244(d)(1)(D) & 2244(d)(2),
counsels that Congress intended a single filing date
to apply to the entire application. See James S.
Liebman & Randy Hertz Federal Habeas Corpus Practice
and Procedure §5.1b at 241 (3rd ed. 1998).  It is a
matter for Congress as opposed to any given court to
change the literal wording of the statute.

In the petitioner's case, July 2, 1998, is the
date on which the factual predicate of even one
claim in the petition could have been discovered
through due diligence, then, under the express
language of section 2244(d), the entire application
is timely.  Thus, although claims within a petition
may have different triggering dates under section
2244(d)(1)(D), section 2244(d)(1) dictates that a
petitioner has until the end of the "latest" of the
four dates in each subpragraph within which to file
"an application."

As for section 2244(d)(1)(C), the same terminology
applies to any claim under this section.  Thereby,
Ground One under either section is a tolling event,
and should be considered timely, and therefore the

-21-

whole application is timely.  Because if not, a
petitioner, conceivably, could not bring all claims
in a single application.  Instead, he would have to
await the timeliness of the latest claim at the risk
of forfeiting federal review of the earlier claims.

In other words, by the time the last claim
became timely, a number of the earlier claims would
have become untimely thereby barring federal review
of the latter claims.  Alternatively, a petitioner
could file at an earlier date and risk precluding
federal review of the claims with the later
limitation periods due to the limits placed on
filing a second application.  See 28 U.S.C.
§2244(b)(2).

Accordingly, the timeliness of ground one
renders all of the other claims in the application
timely, and therefore, this court should turn to
review all of the claims which petitioner raises in
his petition on the basis of exhaustion, procedural
default and section 2254(d) review.

CONCLUSION

Based on the arguments herein, and the reasons
stated, the petitioner respectfully requests that
this Honorable Court DENY the Respondent's Motion To

-22-

Dismiss, and <u>ALLOW</u> the petitioner's case to take its
course.

                              Respectfully submitted
                              by the Petitioner,

                              William R. Mitchell, pro-se
                              P.O. Box 43
                              Norfolk, MA 02056

Dated: July/5, 2004

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
WILLIAM R. MITCHELL,        )
        Petitioner,         )
                            )
                            )
    -V-                     )          CIVIL ACTION
                            )          NO. 10844-MLW
                            )
LUIS SPENCER,               )
        Respondent.         )
                            )
```

## CERTIFICATE OF SERVICE

I, William R. Mitchell, petitioner certifies that
he has served upon the Respondent's attorney,
Susanne G. Reardon, Assistant Attorney General, One
Ashburton Place, Boston, Massachusetts 02108, one true
and accurate copy of the Petitioner's Opposition To
Respondent's Motion To Dismiss Petition For Writ Of
Habeas Corpus, and Supplemental Appendix on this _15_
day of July, 2004, by first class mail, postage prepaid.


                            Respectfully submitted
                            by the Petitioner,


                            William R. Mitchell, pro-se
                            P.O. Box 43
                            Norfolk, MA 02056